UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE M. MASON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:21-cv-616

# OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim under the Child Disability Benefits (CDB) program of Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including entry of an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **vacate the Commissioner's decision and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff filed an application for CDB on February 12, 2019, alleging that she had been disabled as of January 1, 2019, due to autism. (PageID.101–02.) Her claim was denied at the initial level on June 10, 2019. (PageID.112.) On February 3, 2020, ALJ JoErin O'Leary held a hearing and received testimony from Plaintiff and Jessica Coles, an impartial vocational expert. (PageID.60–99.) Following the hearing, the ALJ sent medical interrogatories to medical expert Aaron D. Williams, Psy.D. (PageID.375–78.) After Dr. Williams furnished his answers, the ALJ provided them to Plaintiff's counsel. (PageID.302–03.) Plaintiff's counsel indicated he had no objection to the evidence. (PageID.305.) At the ALJ's invitation, counsel provided a written response on April 28, 2020. (PageID.307–08.)

On July 7, 2020, Plaintiff filed an application for Supplemental Security Income (SSI) under Title XVI of the Act. (PageID.229–31.) Because a supplemental hearing had been scheduled for July 23, 2020, on Plaintiff's claim for CDB benefits, the SSI application was accelerated to the hearing level and joined with the CDB application. On July 23, 2020, the ALJ held a supplemental hearing by telephone, during which Matthew T. Heizler, Ph.D., Plaintiff's academic supervisor from the New Mexico Institute of Mining and Technology, testified. (PageID.42–59.)

On August 5, 2020, the ALJ issued a written decision denying Plaintiff's claim for CDB benefits due to substantial gainful activity but finding that Plaintiff was entitled to SSI benefits because she became disabled on July 6, 2020. (PageID.34–41.) The Appeals Council denied Plaintiff's request for review on June 15, 2021. (PageID.22–24.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on July 20, 2021.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations set forth a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Pursuant to the Act, the Social Security Administration (SSA) has promulgated regulations that provide child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22. 20 C.F.R. § 404.350(a)(5). A claimant must establish a medically determinable physical or mental impairment (expected to last at least 12 months or result in death) that rendered her unable to engage in substantial gainful activity (SGA). 42 U.S.C. § 423(d)(1)(A). If the claimant was working and had SGA prior to or after reaching age 22, she will not be found eligible for benefits regardless of the medical findings. *Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990) (citing 20 C.F.R. § 404.1520(b)).

The ALJ found that Plaintiff had attained age 22 as of February 10, 2007, but that she had engaged in SGA in 2006 and 2007, including after she attained age 22, thus rendering her ineligible for CDB. (PageID.37–38.) The ALJ found that Plaintiff had not engaged in SGA since July 6, 2020, her established date of disability for purposes of her SSI claim. At step two, the ALJ found that Plaintiff had severe impairments of autism spectrum disorder and anxiety with compulsive features. (PageID.38.) At step III, the ALJ found that Plaintiff's impairments met listing 12.10 in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.38–40.) Therefore, Plaintiff was disabled beginning on July 6, 2020, for purposes of her claim for SSI benefits. (PageID.41.)

## DISCUSSION

Plaintiff raises two issues in her appeal: (1) the ALJ committed reversible error by wrongly concluding that Plaintiff had performed substantial gainful activity in the past and by concluding

5

that she was not entitled to CDB benefits; and (2) the appointment of Andrew Saul as a single Commissioner of the Social Security Administration who is removable only for cause and who serves a longer term than that of the President of the United States violates the separation of powers provision and thus causes the decision in this case to be constitutionally defective because the ALJ and the Appeals Council derived their authority from Saul. (ECF No. 14 at PageID.1313.)

**I.      SGA Determination**

The sole issue in this appeal concerning the substance of ALJ's decision is whether her determination that Plaintiff engaged in SGA through her receipt of a stipend for her work as a graduate/teaching assistant while she pursued her master's degree at the New Mexico Institute of Mining and Technology applies the proper legal standards and is supported by substantial evidence. Because the determination of SGA is a step-one determination, at least for purposes of this appeal, Plaintiff's assertion that the ALJ should have ended her analysis at step three lacks merit.[2] Plaintiff provides no support for her suggestion that the ALJ's step-three finding that she met a listing essentially allowed the ALJ to skip the step-one analysis. (ECF No. 13 at PageID.428.) This contention directly contradicts the requisite sequential evaluation set forth in 20 C.F.R. § 1520(a).

>The pertinent agency regulation defines SGA as follows:
>
>(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
>(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

---

[2] SGA may also be an issue at step four. *See Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 425 (E.D. Mich. 2019) ("The failure to establish that the earnings from the past work amount to SGA defeats the ALJ's Step Four finding that Plaintiff could perform his past relevant work.").

20 C.F.R. § 404.1572(a). The Social Security Administration (SSA) has outlined five "general" factors that it considers in determining whether a claimant has the ability to work at the SGA level. 20 C.F.R. § 1573(a)–(e). One factor, how well the claimant performs or performed her work, provides that the claimant may be found unable to perform at the SGA level if her impairments render her unable "to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given to people doing similar work." *Id.* § 1573(b). Another factor recognizes that work done under "special conditions" may not qualify as SGA. *Id.* § 1573(c). The regulation sets forth the following non-exhaustive list of examples of "special conditions": 1) requiring and receiving special assistance from other employees in performing the work; 2) being allowed to work irregular hours or take frequent rest periods; 3) being provided special equipment or assigned work especially suited to the impairment; 4) being able to work only because of specially arranged circumstances; 5) being permitted to work at a lower standard of productivity or efficiency than other employees; or 6) being allowed to work because of a family relationship, past association with her employer, or her employer's concern for her welfare. *Id.*

The regulations create a presumption that a claimant engaged in SGA if her earnings for a particular year satisfied certain compensation thresholds. 20 C.F.R. § 1574(b); *see Dinkel*, 910 F.2d at 318. Any amount that constitutes a "subsidy"—an amount that exceeds the fair value of the claimant's work—will be excluded from consideration of earnings. That is, the SSA will consider the claimant's work to be subsidized by the employer "if the true value of [her] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to [her] for [her] work." 20 C.F.R. § 1574(a)(2). If a claimant was paid a subsidy, the SSA subtracts the amount of the subsidy from the claimant's gross earnings and then uses that reduced amount to determine whether the claimant has done SGA. *Id.* The claimant may

rebut the presumption created by 20 C.F.R. § 404.1574 by presenting evidence pertaining to the considerations set forth in 20 C.F.R. § 1573. *Dinkel*, 910 F.2d at 319. It is undisputed that Plaintiff's monthly earnings in 2006 and 2007 exceeded the monthly SGA earnings thresholds for those years.[3] (PageID.37.)

> The ALJ summarized Dr. Heizler's testimony and found as follows:
>
> At the supplemental hearing, Dr. Matthew Heizler testified he knows the claimant from the work she performed and the classes she took at the New Mexico Institute of Mining and Technology in 2006 and 2007. He indicated he was a faculty advisor of sorts. He stated the claimant was a teaching assistant and expected to work 20 hours a week. He noted that in the summer of 2007, she taught field camp, which was an outdoor course. Dr. Heizler testified he concluded the claimant was not capable of doing the fieldwork. He noted her academic studies were acceptable. He therefore devised a project for her that was all lab work, which she accepted. He stated he tried to do everything to help her succeed, and she was always trying. Dr. Heizler testified the project he devised was less rigorous then [sic] the fieldwork, but she still struggled to meet timelines and make adequate progress. He stated that relative to the other students, she was not performing at an acceptable level. He noted he scaled down the project again and redesigned it a second time. The doctor stated the claimant was ultimately not able to write a thesis or defend her work.
>
> Dr. Heizler testified the claimant received a stipend as part of the graduate assistant program. He stated she never lost the stipend, but significant work accommodations were made for her. The doctor testified the claimant received fewer and easier duties, was able to work irregular hours, worked fewer hours, took more breaks, was frequently absent, was held to lower standards, received extra help and supervision, and had lower quality standards, as comparted to other graduate assistants. Dr. Heizler opined that, compared to a similarly situated graduate assistant, the claimant's productivity was 50%.
>
> I find Dr. Heizler's testimony to be extremely credible, and I therefore find the claimant's work productivity was at 50%, compared to similarly situated graduate students. However, even with a 50% reduction, the claimant's income in 2007 remains above substantial gainful activity levels. With the reduction, the claimant's income of 2007 would be $987.59 per month. This is above the 2007 level of $900.00 per month. Therefore, I find the claimant was engaging in substantial gainful activity after obtaining the age of 22.

---

[3] The monthly earnings thresholds were $860 for 2006, $900 for 2007, and $940 for 2008. *See* SSA Program Operation Manual System DI 10501.015(B), "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity," available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited on July 25, 2022).

> Work activity is evaluated using the substantial gainful activity rules. POMS DI 10501.000 indicated that if an applicant has never been entitled to Child Disability Benefits, and the onset date cannot be established prior to age 22 because of substantial gainful work activity was performed after the age of 22, the claim will be denied for substantial gainful activity purposes. In this case, the claimant was never eligible for Child Disability Benefits prior to filing the current application. She performed work at substantial gainful activity levels after she turned 22 on February 10, 2007. Therefore, I must deny the claimant's application for Child Disability Benefits due to substantial gainful activity.

(PageID.37–38.)

Plaintiff cites several cases from the Sixth Circuit in support of remand, but *Cardew v. Commissioner of Social Security*, 896 F.3d 742 (6th Cir. 2018), is the most analogous. The plaintiff in *Cardew* received a highly-accommodated summer internship at a company, due in no small part to assistance from a cousin who was a vice president. Among other things, the plaintiff was allowed to work a 30-hour work week instead of the usual 40-hour work week, was exempted from various menial tasks that interns performed, and was allowed more frequent breaks to adjust his position in his wheelchair. The employer estimated that the plaintiff was 35% less productive than other summer interns. *Id.* at 744. The ALJ denied the plaintiff's application for benefits because his earnings exceeded the SGA threshold. She reasoned that the plaintiff received a 35% subsidy, subtracted that amount from his gross earnings, and found that the remainder exceeded the income threshold. *Id.* at 749. The Sixth Circuit found the ALJ's decision problematic. First, it noted that, although the ALJ properly considered whether the plaintiff received a subsidy, she failed to consider whether "special conditions," or the plaintiff's performance—factors set forth in 20 C.F.R. § 1573—impacted his ability to perform SGA. *Id.* at 747–48. The court said that the ALJ should have addressed these factors, noting that "[w]hether the claimant's work history demonstrates his ability to engage in substantial gainful activity requires a holistic analysis of a variety of factors, guided but not dictated solely by income in all cases, and tailored to the medical and vocational evidence in an individual claimant's case." *Id.* at 748 (internal citations omitted).

9

In addition, the court observed that, even if the ALJ had considered all the examples of "special conditions" applicable to the plaintiff's situation, she erred by treating the plaintiff's adjusted income as "dispositive." *Id.* Noting the "flexible language" of the regulation, the court said that "[a]llowing for exceptions makes sense," *id.* at 750, because "[w]hile income is an overarching consideration and a 'guide,' it is still only used 'to decide whether the work you have done shows that you are *able* to do substantial gainful activity.'" *Id.* at 751 (quoting 20 C.F.R. § 404.1574(a) (italics in original)). Thus, the ALJ improperly truncated her analysis once she concluded that the plaintiff's earnings met the income threshold.

The ALJ's analysis in the instant case was similarly flawed, as it "used an incomplete and overly rigid framework." *Id.* As in *Cardew*, there is no indication that the ALJ in this case considered all of the "special conditions" applicable to Plaintiff's situation. For example, one of the examples given is that the claimant was given the opportunity to work because of the "employer's concern for [her] welfare." Dr. Heizler testified that he and his colleagues could have decided to remove her stipend because things were not "progressing in . . . an acceptable way," (PageID.53), but they instead "encouraged her" to meet the minimum requirements and "ke[pt] her on the payroll to accomplish that goal despite the fact that it was not progressing at the level that we hoped it would." (PageID.52.) While it is possible that the ALJ considered the presence of "special conditions," her decision gives no indication that she did so. Moreover, similar to the ALJ in *Cardew*, the ALJ here seems to have given Plaintiff's adjusted earnings the same "bright line" treatment that the ALJ employed there. *Id.* 751. That is, having found that Plaintiff's adjusted income exceeded 2007 SGA levels, the ALJ erroneously considered her analysis complete and ignored whether there were circumstances precluding an actual ability to work at the SGA level.

10

Accordingly, remand is appropriate for the ALJ to consider whether Plaintiff can rebut the presumption that her earnings created by showing that she lacks the ability to perform work at the SGA level because her work as a graduate assistant was performed under "special conditions."[4]

## **CONCLUSION**

For the reasons stated above, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. An order consistent with this opinion will enter.

Dated: August 8, 2022   /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

---

[4] As Plaintiff recognizes, because the matter is being remanded on other grounds, the Court need not reach her constitutional argument. (ECF No. 14 at PageID.591.)